**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| Mercedes Kurtis,<br>Plaintiff,<br>v.<br>Equifax Information Services LLC<br>and Student Collections, LLC,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>: | <br>CIVIL ACTION<br><br>CASE NO. 4:23-cv-66-TLS-JEM |

## SECOND AMENDED COMPLAINT

1. Even a judgment from a court gets you nowhere in your credit reporting disputes with Equifax Information Services LLC (Equifax).

2. Equifax, one the largest consumer reporting agencies in the world, makes $billions selling consumer's data. But the conglomerate does nothing to determine whether disputed credit items are inaccurate in complete disregard of consumer rights.

3. Equifax's conduct and omissions, including its failure to conduct any reasonable investigation (termed 'reinvestigation') and perform as required by the FCRA, caused and were substantial factors in causing stress to Ms. Kurtis.

4. This case sounds in tort, over and above the inherent negligence exposed, under the Fair Credit Reporting Act, 15 U.S.C. § 1681i as to Equifax and the FDCPA as to Student Collections, LLC (StuCo.)

### *Landlord's Failure to Provide Basic Needs to Ms. Kurtis*

5. Ms. Kurtis was the victim of a disreputable landlord's inattention and failure and refusal to supply habitable housing with sufficient plumbing to accommodate a reasonable supply of hot and cold running water despite multiple requests.

6. Ms. Kurtis moved into an apartment complex. She had no hot water.

7. Ms. Kurtis made multiple maintenance requests, but those requests were not done.

8. Ms. Kurtis made repeated requests to the landlord for fixes, but it didn't make them.

9. Ms. Kurtis moved out of the apartment.

10. A debt collector, StuCo, indicated that Ms. Kurtis owed money to the landlord.

11. A data furnisher that was listed in Ms. Kurtis's credit file was StuCo.

12. StuCo was also the data furnisher whose tradeline was reporting in Ms. Kurtis's credit file.

### *Lawsuit against the Landlord*

13. The landlord, Nelson partners LLP & NP Fairway TIC 1 LLC, failed to return Ms. Kurtis' security deposit which forced her to bring suit in Tippecanoe County under Cause No. 79D07-2210-SC-559. The Court entered judgment in favor of Ms. Kurtis, finding that she owed nothing to the landlord and its debt collector, StuCo.

14. The landlord agreed Ms. Kurtis owed no money or damages to the landlord.

15. The Court Ordered that landlord shall not report any debt to any third-party credit reporting agencies. Ms. Kurtis disputed to Equifax with this information.

### *Court Order in Favor of Ms. Kurtis*

16. Ms. Kurtis obtained a court order in her favor.

17. Equifax does not dispute that the judgment Ms. Kurtis received was in favor of Ms. Kurtis.

18. Equifax had no reason to believe that the Court Order Ms. Kurtis provided was suspicious or fraudulent.

19. The fact that the judgment was entered in favor of Ms. Kurtis, establishing that she owed nothing was a simply factual inquiry, readily verifiable by examination of the court records in Tippecanoe County, Indiana.

### *The Consumer Reporting Agency - Equifax*

20. Ms. Kurtis disputed the Student Collections, LLC ("StuCo") tradeline with Equifax in 2022 & 2023.

21. Equifax Information Services LLC is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

22. Equifax keeps credit files on almost every adult in the United States.

23. The information Equifax sells about consumers comes from different sources, including data furnishers like banks, loan servicers, and debt collectors.

24. A data furnisher is an entity that reports data to Equifax.

25. Data furnishers can be banks, finance companies, retail merchants and debt collectors.

26. Equifax keeps track of what type of furnisher is providing data.

27. Equifax knows the difference between a bank, finance company, and a debt buyer.

### Equifax Sells Data Contained in Consumers' Files for Profit

28. One aspect of Equifax's business is that Equifax sells its consumer reports to third parties.

29. When information is sold to a third party requesting information on a consumer, that information comes from Equifax's credit file for that consumer.

30. When Equifax provides credit data concerning a consumer, the data comes from Equifax's credit file.

31. If credit data is requested, it comes from Equifax's credit database.

32. Equifax's consumer reports may include collection tradelines.

33. When Equifax receives data from data furnishers (like Student Collections LLC), Equifax puts that information into the appropriate consumer's credit file.

34. Student Collections sent Equifax information about Ms. Kurtis.

35. Equifax placed the data from StuCo into Ms. Kurtis' Equifax file.

***The Debt Collector***
***Student Collections, LLC ("StuCo")***

36. Student Collections, LLC ("StuCo") communicated inaccurate credit information to Equifax after StuCo received notice from Equifax that Ms. Kurtis disputed the StuCo tradeline to the Equifax. Ms. Kurtis' disputes included that she does not owe the amounts reported.

37. StuCo's conduct of ignoring attempts to rectify the reporting and repeated failures which resulted in the company keeping inaccurate information in its credit file violate the Fair Credit Reporting Act ("FCRA").

38. StuCo failed to comply with its duties under the FCRA and the FDCPA.

39. StuCo did no 'investigation' into Ms. Kurtis's disputes of inaccurate items of the StuCo / The Fairway tradeline contained in the files CRAs have for Ms. Kurtis.

40. StuCo is a debt collector as defined by 15 U.S.C. § 1692a(6).

41. Ms. Kurtis disputed to CRAs within the 2 years preceding the filing of this suit.

42. The reporting by StuCo, both before and after it received notice of disputes from Ms. Kurtis, was inaccurate, misleading and incomplete. Plaintiff disputed StuCo's credit reporting through Equifax and disputed the alleged debt directly with StuCo. Despite the disputes, StuCo continued to report inaccurate and misleading to consumer reporting agencies.

43. StuCo illegally attempted to collect payment for a non-existent debt, and one which Plaintiff did not owe, continued illegal communications, made false and misleading representations and used unfair and misleading means, including falsely

representing the status of the debt and seeking to enforce rights which neither StuCo nor its client had the right to enforce.

***Nature of Ms. Kurtis' Disputes***

44. Ms. Kurtis moved into an apartment complex that was managed by Nelson Partners, the landlord. Her apartment had no hot water. She made multiple maintenance requests that were not honored or fixed. She repeatedly explained how the landlord failed to honor its obligations. And she properly moved out.

45. A debt collector, StuCo, falsely represented that Ms. Kurtis owed money in connection to her apartment rental.

46. The StuCo tradeline is a collection tradeline.

47. The alleged original creditor of the StuCo tradeline was Nelson Partners.

48. Nelson Partners is a pseudonym for N.P. Fairway TIC1, LLC.

49. The alleged creditor of the StuCo tradeline uses a d/b/a of The Fairway.

50. Collection items are deemed derogatory by most credit scoring models.

51. Collection items are never positive items.

52. The landlord concluded that Ms. Kurtis owed nothing.

53. The landlord also concluded that it owed money to Ms. Kurtis.

54. The landlord's agreement that Ms. Kurtis owed nothing was reduced to a court order.

55. Ms. Kurtis disputed the StuCo tradeline with Equifax.

56. Ms. Kurtis's written dispute to Equifax attached a court order indicating Ms. Kurtis owed nothing.

57. Equifax was able to understand Ms. Kurtis's disputes.

58. The information Ms. Kurtis provided was legible.

59. Despite receiving Ms. Kurtis's dispute and supporting documentation, Equifax repeatedly represented that Equifax verified the disputed information as accurate.

## Ms. Kurtis made Persistent Detailed Disputes of the Student Collections LLC Tradeline to Equifax

### *Written Disputes*

60. Ms. Kurtis disputed the Student Collections LLC tradeline with Equifax on August 16th of 2022, September 24th of 2022, November 18th of 2022, and January 30, 2023.

61. Ms. Kurtis disputed the Student Collections LLC tradeline in her Equifax file, directly to Equifax, in writing in August of 2022. See EIS-KURTIS-000001-9.

62. In response to Ms. Kurtis's August of 2022 dispute, Equifax did no reinvestigation.

63. Equifax received another dispute from Ms. Kurtis later in August of 2022, as shown by EIS-KURTIS-000015.

64. In response to Ms. Kurtis' second August of 2022 dispute, Equifax continued reporting the disputed Student Collections LLC tradeline, with an Original Amount and Balance Amount of $5,642 as shown by Equifax's dispute results at EIS-KURTIS-0000047-48.

65. Equifax received a third dispute from Ms. Kurtis in September of 2022, as shown by EIS-KURTIS-000060-94.

66. Equifax responded to Ms. Kurtis' third dispute through its letter dated September 29, 2022, indicating the balance is being reported correctly, and still reporting the disputed Student Collections LLC tradeline. EIS-KURTIS-000097-100.

67. Ms. Kurtis disputed a fourth time, directly to Equifax, through her dispute letter dated November 15, 2022, as indicated by EIS-KURTIS-000112-175.

68. Alternatively, Ms. Kurtis disputed a fourth time, directly to Equifax, through her dispute letter dated November 15, 2022, as indicated by EIS-KURTIS-000178-241.

69. Equifax responded to Ms. Kurtis' November 2022 dispute by mail, still reporting the Student Collections LLC tradeline with a Balance Amount of $5,642, as shown by EIS-KURTIS-000242-245.

## ***Phone Disputes***

70. Ms. Kurtis also disputed directly with Equifax by telephone.

71. Ms. Kurtis made multiple phone disputes to Equifax in which the Equifax agent falsely represented their names as "Steve," "Debbie," and "Kristen." These were all call center dispute agents working in India.

72. Mr. Kurtis disputed a fifth time, directly to Equifax, by telephone on 12/31/22.

73. The Equifax dispute agent introduced himself as "Steve."

74. "Steve" asked whether the account was legitimate or fraud, giving no other options.

75. Ms. Kurtis explained that she sent in documents. "Steve" responded, "Yeah. I saw those documents. I don't know if anyone told you this or not, but instead of sending in those documents – because those won't help you in this case. If you don't owe anything to them, just go to a website… It's a report fraud"

76. "Steve" gave Ms. Kurtis the website fraud.ftc.gov

77. "Steve" added, "Now, this is the FTC's website, the Federal Trade Commission. If you believe you don't owe them anything and if they are currently reporting wrong, then you just have to file FTC report. And the documents which you sent us here. . . upload those documents on that FTC website. You will receive a copy of FTC report. And that is the one report, which credit bureaus do – do not like."

78. "Steve" went on, "If you send us the FTC report, then we will not verify this information from – with Fairway or with Student Collections."

79. "Steve" added, "And then we will remove the balance that's on the account, whatever the dispute is about. But you will have to file the FTC report first for that."

80. Ms. Kurtis asked if there was no way to do another dispute with Equifax.

81. "Steve" responded, "If you will file the dispute again with us, the procedure will remain the same. And, again, the Student Collection or the Fairway, they might deny your claim. So it would be better if you filed the FTC report."

82. Ms. Kurtis disputed a sixth time, directly to Equifax, by telephone on 01/30/23.

83. Ms. Kurtis' 01/30/23 phone dispute directed Equifax to Melissa Burdy.

84. The first Equifax dispute agent speaking to Ms. Kurtis on 01/30/23 transferred her to the fraud department.

85. On 01/30/23, Ms. Kurtis disputed by phone to an Equifax dispute agent identifying herself as Debbie. "Debbie" represented that the tradeline was verified and "That's why it is still showing up – the collection is still showing up on your file."

86. "Debbie" stated that Ms. Kurtis disputed many times. "Debbie" added, "You need to contact them [the alleged original creditor] directly."

87. Ms. Kurtis made another dispute through "Debbie," but "Debbie" responded that "the same thing will show up."

88. Mr. Kurtis stated she was not sure what to do. "Debbie" responded, "Yeah. Again, if you want to update this one or verify with your lender, ou have to contact them directly and inform them that the balance that they report is – the report is inaccurate."

89. Ms. Kurtis called Equifax again on New Year's Eve of 2022 and disputed the Student Collections LLC tradeline. Equifax failed to conduct any reinvestigation following those disputes.

90. Ms. Kurtis called Equifax again, on 02/15/23. She spoke to an Equifax dispute agent identifying herself as "Kristen."

91. "Kristen" represented that one of the Equifax responses "was that Equifax was able to verify that the account belongs to you."

92. "Kristen" told Ms. Kurtis, "But then the second one, they did like a more – more of an investigation to try to find out if, you. Know, the collection account was not you or – and that it needed to be taken off And then they realized that they could, you know, take it off your credit report."

93. "Kristen" represented:

> "So when a dispute is done and – whoever does the investigation about the reason why the account was disputed, they contact the lender. And since we are a credit reporting agency, whatever the lender or the creditor tells us, we pay attention to that.
>
> So if – so if the – you know, the company is telling us, you know, she doesn't owe anything, obviously, we're going to just take that off of the credit report because, you know, basically the company, right, that was being disputed told us that was the wrong information."

94. "Kristen" added, "you would have to talk to the company and say why they gave us so many different responses."

95. "Kristen" stated, "Let's say you disputed the collection account several times, and those – all of those disputes have different responses. It's because that company is giving us that response."

96. "Kristen" then tried to sell Ms. Kurtis a monitoring services, explaining "we have like different plans with, you know, different budgets"

97. "Kristen" told Ms. Kurtis, "Whatever the lender or creditor tells us, we pay attention to that."

98. Equifax failed to conduct any investigation or 'reinvestigation' into any of Ms. Kurtis' disputes as contemplated by the FCRA.

99. After being notified of Mr. Kurtis' disputes, Equifax failed to take any action to determine whether the disputed information was inaccurate.

100. Despite the status of the disputed item being that nothing was owed, Equifax failed to record the current status of the disputed information.

101. Equifax failed to review or consider relevant information submitted by Ms. Kurtis.

102. Equifax failed to timely delete the disputed item from Ms. Kurtis' credit file with Equifax.

103. Equifax failed to promptly notify the furnisher, StuCo, of Ms. Kurtis' dispute.

104. Equifax received ACDVs from StuCo in response to notice concerning Ms. Kurtis' disputes.

105. On information and belief, Equifax did not notify StuCo of all of Ms. Kurtis' disputes.

106. Equifax cannot identify any person which performed any actual reinvestigation concerning Ms. Kurtis' disputes.

### ***The Dispute Processing Agent:<br>Teleperformance Business Services US, LLC***

107. Foreign or domestic, the people who work on Equifax's behalf concerning disputes from consumers are customarily called dispute agents.

108. Equifax's dispute agents process a dispute by ultimately pressing a submit button.

109. All of the agents tasked with processing Ms. Kurtis's disputes live and work in India.

110. Equifax's response to a consumer's dispute is not intended to determine whether the item is inaccurate. Instead, Equifax's dispute process presumes accuracy when following Equifax's policies and procedures.

111. Equifax has chosen to outsource many of the disputes it receives to a company in India called Teleperformance.

112. Teleperformance has been a vendor for Equifax for at least a decade.

113. Teleperformance has engaged in a common joint venture with Equifax to provide services for Equifax. Teleperformance profits from this.

114. Teleperformance and Equifax are mutual agents with regard to the investigation of consumer credit data.

115. Equifax outsources certain credit disputes processing to a company which employs people in India, named Teleperformance Business Services US, LLC.

116. Equifax has a contract with Teleperformance for Teleperformance to perform Equifax's federally mandated dispute reinvestigations and processing of consumer disputes, all for the benefit of the consumer. The consumer here is Ms. Kurtis. Equifax delegated its 15 U.S.C. § 1681i obligation to Teleperformance, conferring those duties upon Teleperformance. Teleperformance assumed these duties.

117. But Teleperformance failed to perform as required. This harmed Ms. Kurtis as she was deprived of the benefit intended, including a corrected credit file and prompt notice.

118. Teleperformance is registered with the Indiana Secretary of State as a Pennsylvania limited liability company with its principal office in Utah. Teleperformance's registered agent is C T CORPORATION SYSTEM, 334 North Senate Avenue, Indianapolis, IN 46204.

119. Equifax has managerial control over the foreign agents that are operating on behalf of Equifax.

120. Equifax's foreign agents have the same administration as the domestic agents employed by Equifax.

121. Equifax has the same policies and procedures for itself as it has for Teleperformance.

122. Equifax has the same quality assurance as Teleperformance.

123. Equifax has the same supervision for Teleperformance as it does for Equifax.

124. Equifax has the same guidelines for Teleperformance as it does for Equifax.

125. Equifax has the same administrative staff associated with Teleperformance operations and with Equifax's operations.

126. As part of managerial control, Equifax can talk to an agent at Teleperformance who worked on an Equifax file.

***Equifax Has Documents***

127. Equifax has reviewed maintenance logs concerning Ms. Kurtis and the StuCo tradeline.

128. Equifax has call recordings concerning Ms. Kurtis and the StuCo tradeline.

129. Equifax did not produce phone recordings in response to Ms. Kurtis' discovery request until after Equifax's Rule 30(b)(6) deposition began.

130. Equifax can find the identity of its dispute agents who processed a dispute by reviewing information Equifax retains electronically.

131. Equifax identified the agents who it believed were involved in processing Ms. Kurtis' disputes by interrogatory responses.

### *Equifax's Responses to Ms. Kurtis's Disputes*

132. Ms. Kurtis's written disputes were scanned into Equifax's system and then placed into a queue.

133. One of Equifax's stated purposes is to ensure maximum possible accuracy.

134. The results of Ms. Kurtis' disputes, along with other consumers' disputes, reveal Equifax refusal to give due regard to a court order.

135. Equifax will not independently suppress or modify disputed information using a court order.

136. In processing Ms. Kurtis's dispute, Equifax never determined whether the disputed information was accurate.

137. In processing Ms. Kurtis's dispute, Equifax never communicated with Ms. Kurtis' landlord, the court that issued the order which Ms. Kurtis provided to Equifax.

138. In processing Ms. Kurtis's dispute, Equifax never reviewed any court docket, never tried to learn what the Judge or landlord said, never looked at any court docket.

139. In processing Ms. Kurtis's dispute, Equifax never communicated with Ms. Kurtis' former landlord, the alleged original creditor of the disputed item.

140. If a dispute agent had called Ms. Kurtis in response to receiving one of her written credit disputes, that would be a violation of Equifax's policies and procedures.

141. Ms. Kurtis's disputed dated 8/8/2022 was received by Equifax and stamped on 08/16/2022. See EIS-KURTIS-000001-000008.

142. The dispute agent(s) tasked with processing Ms. Kurtis's 8/8/2022 dispute shown by EIS-KURTIS-000001-000008 are:

    a. Parth Shinde

    b. Kashif Sayed

c. Amit Singh

143. Each of the dispute agents tasked with processing Ms. Kurtis' disputes, concerning the StuCo tradeline, live and work in India.

144. In response to Ms. Kurtis's dispute shown by EIS-KURTIS-000001-000008, Equifax sent dispute results indicating THE DISPUTED ITEM IS NOT CURRENTLY REPORTING ON THE EQUIFAX CREDIT PROFILE. See EIS-KURTIS-000012.

***Equifax's Lack of Knowledge***

145. Concerning Ms. Kurtis's disputes, Equifax does not know what its dispute agents reviewed, considered, knew or understood.

146. Since Equifax's processing of Ms. Kurtis's disputes, no one at Equifax has communicated with any of the dispute agents concerning the processing Ms. Kurtis's disputes.

147. Equifax does not know that the information—which Equifax receives from data furnishers and places into Equifax's files—is accurate.

148. Equifax does not know whether debt collectors like StuCo have any personal knowledge that the information it provides to Equifax is accurate.

***Equifax Refuses to Admit that the Information at Issue was Inaccurate.***

149. Equifax cannot state whether Ms. Kurtis owes any money to The Fairway or Nelson Partners or StuCo.

150. As of the time the StuCo tradeline was reporting in Ms. Kurtis's file, Equifax was unable to state whether Ms. Kurits owed money to Nelson Partners, the Fairway or StuCo.

151. Equifax's definition of inaccurate does not include misleading.

152. Equifax has now reviewed documents that it marked as EIS-KURTIS-000001 through EIS-KURTIS-000273.

153. Equifax takes the position that it has never placed any false or misleading information in Ms. Kurtis' credit file concerning the StuCo tradeline.

154. Equifax takes the position that it has never placed any false or inaccurate information in any of Ms. Kurtis's credit files.

155. At some point, Equifax received a response from StuCo indicating that the item Mr. Kurtis disputed was to be removed from her credit file.

156. Equifax received a response from the data furnisher which indicated the disputed StuCo item was accurate and another response which indicated the item was to removed from Ms. Kurtis's credit report. And Equifax represents that none of the data furnisher's responses were inaccurate.

157. It's Equifax's position that the information that Equifax reported in Ms. Kurtis' file was accurate.

158. It's Equifax's position that when Equifax removed the tradeline from Ms. Kurtis's file, that was accurate.

159. Equifax never makes a determination as to whether information is accurate or inaccurate with respect to its reinvestigation process.

160. When Equifax does what it calls a reinvestigation, Equifax applies its policies and procedures.

161. The decisions available to a dispute agent processing a general dispute for Equifax include deciding whether information is going to remain, be deleted, or be modified.

162. But an Equifax's dispute agent's decisions are limited based on Equifax's preset policies and procedures.

163. An Equifax dispute agent's decisions are pursuant to Equifax's policies and nothing else.

164. Pursuant to Equifax's policies and procedures, an Equifax dispute agent is supposed to review all documents provided with a consumer's dispute, select up to 2 pre-populated dispute codes, and select a submit button.

165. An Equifax dispute agent's selection a submit button triggers the generation of an ACDV form.

166. An ACDV is an electronic form, which stands for automated credit dispute verification, and Equifax uses ACDV forms to communicate with furnishers.

167. Equifax is aware that data furnishers have the option of automating the processing of ACDVs received from Equifax.

***How a Dispute Flies Through Equifax***

168. When a phone dispute is made to Equifax by a consumer, the agent on the phone with a consumer enters information into Equifax's computer system in order to generate an ACDV, which takes place when the agent selects a submit button.

169. Equifax does not know whether it would be wrong to violate the law.

170. While Equifax claims people were involved in processing Ms. *'s disputes, Equifax never spoke to them.

171. Concerning Ms. Kurtis, Equifax never tried communicating with the people it claims were involved in processing Ms. Kurtis' disputes.

172. The people Equifax claims were involved in Ms. Kurtis's disputes followed Equifax's policy.

173. Equifax's position is that the people Equifax claims were involved in processing Ms. Kurtis's disputes did nothing wrong.

### *The So-called 'Reinvestigation' Process*

174. Equifax is required to perform a reinvestigation when it receives notice from a consumer about information that is either incomplete or inaccurate in the consumer's credit file.

175. The requirement that Equifax fulfill—upon receiving notice from a consumer of incomplete or inaccurate information in the consumer's file—is called a reinvestigation.

176. An investigation is supposed to be the result of research and investigation done in order for a data furnisher to prepare an investigative report.

177. A reinvestigation by a consumer reporting agency therefore presumes some investigation was already to have taken place.

178. Equifax does not know whether the data furnishers do any actual investigation before providing data to Equifax.

179. Equifax does not actually know what the dispute processing agents actually do.

180. Equifax claims to have contractual agreements with data furnishers that provide data to Equifax.

181. These contractual agreements are sometimes called subscriber agreements.

182. Equifax maintains that its subscriber agreements are confidential.

183. Equifax had a subscriber agreement with Student Collections, LLC.

184. Equifax has not provided its subscriber agreement with Student Collections, LLC to Ms. Kurtis or her counsel.

### *Policies and Procedures*

185. Equifax's position pertaining to Ms. Kurtis' disputes is that everyone did everything adhering to policy.

186. Equifax has no unwritten policies or procedures.

187. Equifax's dispute agents were not permitted to independently make any changes to Ms. Kurtis's file based on the information she provided.

188. Equifax's performance concerning Ms. Kurtis's disputes was done with the intent of Equifax's policies and procedures.

189. Pertaining to Ms. Kurtis's disputes and how they were handled, Equifax's dispute processing was handled based upon Equifax's policies and procedures with the intent of following Equifax's policies and procedures.

190. Equifax takes the position that its policies and procedures were put in place based in part on Equifax's understanding of the law.

191. Equifax provided to Ms. Kurtis the results of Equifax's "reinvestigation."

192. The results of Equifax's "reinvestigation" process were as envisioned by Equifax.

### *Equifax Has Policies to Allowing Review and Reliance on /Bankruptcy Court Records, but Not for Orders from Other Courts Establishing that Consumer Do Not Owe Debts*

193. Equifax has policies and procedures in place concerning people who have filed for bankruptcy which allows dispute agents access to the internet to go to an online court docket and pull up court orders with respect to a bankruptcy discharge.

194. Equifax's policies and procedures allow Equifax's dispute agents to access and review bankruptcy discharge orders and to change the information in Equifax's file based on that information.

195. In the context of disputes involving bankruptcy items, Equifax's authorized dispute processing agents are permitted to review court orders and online court dockets.

196. Some of the tools available to some of Equifax's dispute agents include accessing the internet for reviewing court dockets that contain orders.

197. Outside of the bankruptcy context, Equifax has no policy or procedure in place which allows its dispute processing agents to review court dockets or orders from those dockets and use that information to make changes to a consumer's file.

***General Disputes are Treated Differently***

198. While Equifax's dispute agents are physically capable of accessing and reviewing the information in a court docket, Equifax's general dispute processing agents are not allowed to go outside of Equifax's policies and procedures.

199. With respect to Ms. Kurtis's disputes, reviewing a court's docket was not available as part of Equifax's process.

200. No one at Equifax was allowed to review court dockets concerning Ms. Kurtis' disputes, per Equifax's policy.

201. Equifax does not know if the dispute processing agents tasked with handling Ms. Kurtis's disputes had access to outside websites.

202. Equifax has the resources to put in place the capability to allow its dispute agents access to the internet.

203. Equifax will not allow all of its dispute agents to look for documents from a court either physically in person or electronically over the internet.

204. The individuals who processed Ms. Kurtis's disputes did not have the authority in their roles to access court orders on the internet.

205. The individuals who processed Mr. Kurtis's disputes acted within Equifax's policy.

206. With the exception of one of Equifax's templated letters that had nothing to do with the investigation, Equifax processed Ms. Kurtis's disputes precisely as Equifax intended.

207. The way Equifax processed Ms. Kurtis's disputes was not an accident.

208. One of Equifax's templated letters to Ms. Kurtis did not include the pre-populated information Equifax intended.

209. Other than Equifax's letter omitting pre-populated information, there were no system issues in this case.

### *Equifax Has No Knowledge Of What Dispute Agents Did Or Considered*

210. Outside of what Equifax can read in documents, Equifax does not know what its dispute processing agents did, reviewed or considered.

211. Equifax does not know whether its dispute processing agents wanted more information.

212. Equifax claims it assisted Ms. Kurtis.

### *Equifax's Agents Blindly Adhere To Unreasonable Policies*

213. Equifax's expectation is that everyone working for Equifax would do what is expected of them, which is to adhere to Equifax's policies.

214. The policies, concerning Ms. Kurtis's disputes, that were in place at the time of Ms. Kurtis's disputes are the same policies in place today.

215. There have been no changes to Equifax's policies since Ms. Kurtis made her disputes.

### *Disputes Involving Court Orders – Equifax's Repeated History of Claiming to Data which Contradicts Court Orders has been "Verified"*

216. Among the disputes Equifax receives from consumers, Equifax has received disputes where the consumer has indicated information is inaccurate and provides a court order as support.

217. Ms. Kurtis was not the first person to dispute information in his or her Equifax file based on having a court order in their favor.

218. This is not the first case in which Equifax has been a defendant where Equifax's responses concerning court orders were an issue in the case.

219. Equifax does not know if the people involved in processing Ms. Kurtis's disputes were ever notified that their dispute processing is the subject of a lawsuit.

220. Equifax does not know whether it has required the dispute agents who processed Ms. Kurtis's disputes to do anything differently in the way they process disputes.

221. Equifax received multiple disputes from Fabian Huizar disputing an item in his Equifax file and providing Equifax a court order which established nothing was owed as a matter of law.

222. Equifax did not remove, suppress or modify the information disputed by Fabian Huizar in response to his dispute.

223. Equifax received a dispute from Erin Browne f/k/a Erin Livesay disputing an item in her Equifax file and providing Equifax a court order which established nothing was owed as a matter of law.

224. Equifax did not remove, suppress or modify the information disputed by Erin Browne f/k/a Erin Livesay in response to her dispute.

225. Equifax received a dispute from Zepherine Miller disputing an item in her Equifax file and providing Equifax a court order which established nothing was owed as a matter of law.

226. Equifax did not remove, suppress or modify the information disputed by Zepherine Miller in response to her dispute.

227. Equifax received a dispute from Matthew Bunch disputing an item in her Equifax file and providing Equifax a court order which established nothing was owed as a matter of law.

228. Equifax did not remove, suppress or modify the information disputed by Matthew Bunch in response to his dispute.

229. Equifax treated Ms. Kurtis in the exact same manner as any other consumer in her situation.

***Equifax Unmistakably Received the Judgment from Ms. Kurtis***

230. EIS-KURTIS-000112 is a dispute letter, dated November 15, 2022, which Ms. Kurtis mailed to Equifax.

231. EIS-KURTIS-000112 is a document Equifax received on 11/18/22.

232. Ms. Kurtis's dispute, EIS-KURTIS-000112, notifies Equifax that Ms. Kurtis does not owe concerning the StuCo tradeline.

233. Equifax has no reason to believe that the court order Ms. Kurtis provided to Equifax was not valid or not authentic.

234. Equifax believes the Court order to be valid.

235. Equifax mailed dispute results to Ms. Kurtis, dated November 25, 2022, indicating in part, "We have researched the collection account" and Equifax continued to report the Student Collections LLC tradeline, with an original amount and balance owed of $5,642 as shown by EIS-KURTIS-000242-245.

***Unreasonable & Reckless Policy***

236. Recklessly, Equifax has failed to put in place any policy which is designed to ensures—or even determine—accuracy concerning its data and reports.

237. Equifax has no policy in place for disputes when consumers have judgments or court orders as proven by multiple consumers' disputes, with judgments in their favor establishing the inaccuracy of Equifax's files, has repeatedly resulted in Equifax failing to correct, delete, suppress or modify the inaccurate items.

***Equifax Left Ms. Kurtis with No Options***

238. Equifax's position—on what else Ms. Kurtis could have offered to Equifax to remove or modify the information Equifax reported in Ms. Kurtis's file—was that Ms. Kurtis could provide documentation that Equifax deemed acceptable.

239. Equifax does not publish any guidance indicating what is necessary for someone in Ms. Kurtis' situation to have a tradeline suppressed, deleted or modified.

240. Equifax would not accept the Court Order Ms. Kurtis provided as sufficient to enable Equifax to modify the tradeline.

***Equifax Is Incapable of Supporting, or Refuses to Support, its Positions***

241. Equifax was unable to answer whether the individuals identified in Equifax's discovery responses were actually involved in Ms. Kurtis' disputes.

242. Equifax raised affirmative defenses against Ms. Kurtis when Equifax had no factual support for those defenses.

243. Equifax has no foundation for any belief that Ms. Kurtis was responsible for the Student Collections, LLC debt indicated by the tradeline in Equifax's file for Ms. Kurtis since July 1, 2022.

244. Equifax never determined whether Ms. Kurtis was responsible for the alleged debt at issue here, the StuCo tradeline.

245. Equifax failed to prepare its Rule 30(b)(6) representative as to the number of subscribers that Equifax has had in the years 2022, 2023 or 2024.

246. Equifax failed to prepare its Rule 30(b)(6) representative as to Equifax's revenue for any quarter or year since 2022.

247. Equifax failed to prepare its Rule 30(b)(6) representative as to Equifax's profit for any quarter or year since 2022.

248. Equifax failed to prepare its Rule 30(b)(6) representative as to the last known addresses for the people involved in processing Ms. Kurtis's disputes.

249. Equifax failed to prepare its Rule 30(b)(6) representative as to the number of disputes Equifax's has received and processed concerning disputes of an item in a consumer's file in the years 2022 and 2023.

250. Equifax is unable to identify the number of disputes in which Equifax has been alerted to the existence of a court order that consumers claim affects the disputed information.

251. Equifax failed to prepare its Rule 30(b)(6) representative as to Equifax's labor costs for processing consumer credit file disputes.

252. Equifax failed to prepare its Rule 30(b)(6) representative as to the amount Equifax charges for selling consumer reports.

253. Equifax failed to prepare its Rule 30(b)(6) representative as to the number of individuals processing consumer disputes or reinvestigations

   a. employed by Equifax working in a foreign country;
   b. employed by Equifax working in the United States;
   c. employed by a vendor or contractor working in a foreign country.
   d. employed by a vendor or contractor working in the United States.

254. Equifax has its own financial statements for the calendar years 2022 and 2023.

255. Equifax has not produced its financial statements to Plaintiff or her counsel.

256. Equifax has its own balance sheets.

257. Equifax conducts credit file dispute processing in India, the Philippines, Costa Rica and the United States.

258. Equifax has approximately 1,000 dispute agents.

259. Equifax does not have enough dispute agents to properly respond to the disputes it receives from consumers disputing information in their Equifax files.

260. Equifax never added a 100-word statement to Ms. Kurtis' credit file.

Ms. Kurtis seeks all available relief pursuant to law. This includes without limitation: punitive and actual damages including for emotional distress, pre-and post-judgment interest, fees and costs.

**JURY DEMAND**

Ms. Kurtis demands a jury trial on all issues herein.

Respectfully submitted,
/s/ Duran L. Keller
Duran L. Keller (#31743-79)
**KELLER LAW**
P.O. Box 1248
Lafayette, Indiana 47902
Telephone: (765) 444-9202
Facsimile: (765) 807-3388
Email: duran@kellerlawllp.com
*Attorney for Mercedes Kurtis*

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was served upon all parties via CM/ECF.

Date: Lafayette, Indiana
April 17, 2024

/s/ Duran L. Keller
Duran L. Keller